ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ROBERTO PALOU BOSCH Y AMARILYS DE JESÚS GONZÁLEZ Y LA SOCIEDAD DE GANANCIALES<br><br>RECURRENTES<br><br>V.<br><br>SUCESIÓN JORGE MORALES CRUZ COMPUESTA POR JORGE MORALES NAVARRO, ROBERTO MORALES NAVARRO, SUCESIÓN HAYDEE MORALES NAVARRO, LIMARIE O'FARRIL MORALES, DAGMARIE O'FARRIL MORALES, JAVIER O'FARRIL MORALES Y JULIA NAVARRO<br><br>RECURRIDOS | KLCE202400525 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. D AC2017-0363<br><br>(403)<br><br><br>Sobre:<br><br>DISOLUCIÓN DE COMUNIDAD DE BIENES Y OTROS |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Brignoni Mártir y el Juez Ronda del Toro

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparecen ante nos, Roberto Palou Bosch, Amarilys De Jesús González y la Sociedad Legal de Gananciales compuesta por ambos, (en adelante, en conjunto, "la parte peticionaria"). Su comparecencia es a los fines de solicitar nuestra intervención para que dejemos sin efecto la determinación emitida y notificada el 15 de febrero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante el referido dictamen, el foro recurrido, declaró *No Ha Lugar* la "*Solicitud de Sentencia Sumaria Parcial*," presentada por la parte peticionaria. Todo, dentro de un pleito sobre división de comunidad de bienes, en contra de las sucesiones de Jorge Morales Cruz y Julia Navarro Navarro, compuestas por los miembros de la sucesión de Jorge Morales Navarro; Wanda Ivette Morales

Gómez; Janette Morales Gómez; Roberto Morales Navarro; y la sucesión de Hayde Morales Navarro, compuesta a su vez por Limarie O'Farrill Morales, Dagmarie O'Farrill Morales y Javier O' Farrill Morales, (en adelante, en conjunto, "la parte recurrida").

Por los fundamentos que expondremos*, expedimos* el presente recurso de *certiorari,* y *revocamos* el dictamen recurrido.

**I.**

El 30 de mayo de 2017, la parte peticionaria presentó la "*Demanda*" de epígrafe. Mediante esta, relató que es partícipe de una comunidad de bienes existente sobre una finca sita en el Municipio de Guaynabo. Arguyó, que en dicha finca se forjó el negocio conocido como "Macelo La Muda." Según expresó, su participación sobre la propiedad consistía en un cincuenta por ciento (50%). Comunicó, que el señor Jorge Morales Cruz (en adelante, "señor Morales") y la señora Julia Navarro Navarro (en lo sucesivo, "señora Navarro"), eran dueños del otro cincuenta por ciento (50%) de la cosa común.[1] A su vez, indicó que el objetivo de la presente reclamación era dividir la referida comunidad de bienes, dado que, resultaron infructuosos sus intentos de disolverla extrajudicialmente.

Ante ello, solicitó al foro recurrido que se declarara la venta de la propiedad mueble e inmueble que conforma el negocio "Macelo La Muda", a través de un corredor de bienes raíces. Peticionó, además, el cobro de los gastos legales que había incurrido, los cuales valoró en la cantidad de $50,000.00. Particularmente, solicitó el pago de costas, gastos, desembolsos y honorarios de abogado. Acto seguido, el 5 de julio de 2017, la parte peticionaria presentó una "*Demanda Enmendada.*" Esto, a los únicos efectos de sustituir al señor Morales como parte demandada, toda vez que había fallecido. En consecuencia, añadió como demandados a sus herederos.

---

[1] Señalamos, que estas dos personas fallecieron. El señor Morales falleció el día 31 de mayo de 2017. Mientras que la señora Navarro falleció el día 1 de septiembre de 2021. Sus herederos los sustituyeron como partes en el pleito. En la actualidad dichos herederos conforman la parte recurrida.

En respuesta, el 5 de septiembre de 2017, la parte recurrida presentó una "*Contestación a Demanda Enmendada.*" En su alegación responsiva, negó que la parte peticionaria haya realizado gestiones a los fines de conseguir la división de la comunidad de bienes. Además, argumentó, que la venta de la finca a terceras personas no es el único medio por el cual se podría efectuar la división de dicha comunidad. Ello, dado que, tiene un derecho de adquisicion preferente sobre la cuota de participación de la parte peticionaria, de esta desearla enajenar.

En el mismo escrito, la parte recurrida, instó una "*Reconvención.*"[2] En esencia, expuso que la parte peticionaria había obrado de mala fe al ejecer la acción para dividir la comunidad de bienes. Toda vez que, el objetivo de tal actuación era trastocar su derecho propietario. Además, planteó que en la aludida finca se realizaba una actividad agrícola, la cual aportaba a la economía y bienestar social de Puerto Rico. Por consiguiente, según alegó, los actos de la parte peticionaria tenían como fin destruir dicha actividad. En virtud de lo expuesto solicitó una compensación en daños y perjuicios por la cantidad de $100,000.00. A su vez, peticionó un reembolso por los gastos que había tenido que incurrir en la conservación y mantenimiento de la finca en cuestión. Valoro estos en una suma no menor de $6,000.00.[3]

---

[2] El 11 de enero de 2018, la parte peticionaria presentó una "*Contestación A La Reconvención y Segunda Demanda Enmendada.*" En respuesta a la reconvención, negó que la parte recurrida tenga derecho a algún remedio en daños. A su vez, negó la existencia de los gastos de mantenimiento y conservación aducidos por la parte recurrida. Argumentó, que dicha parte estuvo recibiendo ganancias del negocio instaurado en la finca, y no le había extendido a su persona ingreso alguno. Además, esgrimió que la referida parte le había privado del goce pacífico de dicha finca. En cuanto a la "*Segunda Demanda Enmendada,*" expuso que la parte recurrida, de forma unilateral y sin autorización para ello, operaba el negocio "Macelo La Muda" sin efectuar: pagos de seguro social y de desempleo; sin una póliza vigente de la Corporación del Fondo del Seguro del Estado (CFSE); sin pagar los impuestos del "Fondo de Mejoramiento de la Carne de Res;" y omitiendo la radicación de las planillas estatales y federales correspondientes. Indicó, que al ser una de las partes comuneras, tales actos le habían causado daños ascendentes a la cantidad de $200,000.00. A su vez, reclamó una cuantía de $150,000.00., en concepto de los daños que había sufrido como consecuencia de la negativa de la parte recurrida de dividir la comunidad de bienes en cuestión.

[3] Precisa señalar, que el 11 de diciembre de 2018, el foro recurrido emitió una "*Sentencia Parcial Y Orden.*" La referida determinación, fue emitida de conformidad con lo resuelto en la "*Sentencia*" dictaminada el 28 de septiembre de 2018, por este Tribunal de Apelaciones en el caso: **KLCE201800978**. En dicho caso, este Foro había dictaminado, como cuestión de derecho, la procedencia de la división de la comunidad de bienes. A la luz de ello, y mediante la aludida *Sentencia Parcial Y Orden,*" el tribunal de instancia, ordenó a las partes que establecieran acuerdos sobre el modo de ejecutar la división de la comunidad de bienes. A su vez, le ordenó que presentaran la tasación/avalúo e inventario correspondientes para ello.

Luego de varias incidencias procesales que no son necesarias de pormenorizar, el 2 de diciembre de 2021, la parte peticionaria presentó una "*Tercera Demandada Enmendada*." Mediante esta, solicitó varias indemnizaciones por el sufrimiento de daños económicos y emocionales. En esencia, su petición de daños se amparó en el uso exclusivo que la parte recurrida estuvo ejerciendo sobre la propiedad sin que mediara su consentimiento. Entre otras cosas, resaltó la explotación económica que la parte recurrida ejecutaba sobre la finca, la cual solo beneficiaba a dicha parte. A su vez, indicó que la referida parte había obstaculizado la venta de la propiedad y con ello limitado su libre disposición. De otra parte, solicitó que se le ordenara a la parte recurrida el pago de una renta mensual por el referido uso exclusivo de la finca. A tenor con lo resuelto en *Molina González v. Alvarez Gerena*, 203 DPR 442 (2019). Según adujo, dicha renta se debía computar desde el momento en que se solicitó la división de la comunidad de bienes. Arguyó, que dicho momento ocurrió en la fecha en que se presentó la "*Demanda*" de epígrafe. Es decir, el día 30 de mayo del año 2017. Computó el referido canon de arrendamiento en una cantidad no menor de $516,666.50, más intereses por mora.

En reacción, el 24 de junio de 2022, la parte recurrida presentó una "*Contestación A Tercera Demanda Enmendada*." En esencia, negó la procedencia de los daños aducidos por la parte peticionaria, toda vez que, dicha parte había abandonado la propiedad e incumplido con sus obligaciones como comunera. A su vez, negó que estuviera obstruyendo la venta de la aludida finca. En cambio, esgrimió que había existido una oferta de compraventa, y que esta había sido retirada por el mismo oferente. Además, reiteró que la parte peticionaria tenía un deber de satisfacer el pago de los gastos de conservación y mantenimiento, según le correspondían como comunero. Añadió, que como parte co-propietaria tenía un derecho de disfrute de la cuota particular que le pertenecía. Por lo cual, ello no le prohibía la realización de la operación que llevaba a cabo en la referida propiedad.

Posteriormente, el 1 de febrero de 2023, la parte peticionaria presentó una "*Solicitud de Sentencia Sumaria Parcial.*"[4] Mediante esta, se limitó a solicitar que se declarara que tenía derecho a que la parte recurrida le pagara una renta por el uso exclusivo de la finca en cuestión. Expresamente esbozó lo siguiente:

> "La causa de acción y reclamación respecto a la cual se solicita sentencia sumaria parcial se circunscribe a si los demandantes tienen derecho a que los demandados les compensen por el uso y disfrute exclusivo de su 50% de participación en común *pro indiviso* en la propiedad desde el 6 de abril de 2017."

Indicó, que dicho canon de arrendamiento se debía computar desde la aludida fecha de 6 de abril de 2017. Ello, dado que, fue la fecha en que instó una reclamación sobre "desahucio en precario y falta de pago," contra uno de los miembros que componen las sucesiones del señor Morales y la señora Navarro. Agregó, que los aludidos causantes estuvieron presentes en dicho pleito como partes interventoras. Señaló, como hechos en controversia, el valor de la finca y sus anexos, la enajenación de dicha propiedad y la cantidad de renta mensual adeudada por la parte recurrida. Indicó, que la referida cuantía en concepto de renta adeudada se debía dirimir en una vista evidenciaria. En virtud de ello, solicitó al foro recurrido que declarara *Ha Lugar* la "*Solicitud de Sentencia Sumaria Parcial.*"

En contestación a dicha solicitud, el 17 de abril de 2023, la parte recurrida presentó una "*Oposición A Solicitud De Sentencia Sumaria Parcial.*"[5] En síntesis, expresó que no existe controversia sobre el hecho de que ambas partes tienen una comunidad de bienes, y que sus respectivas

---

[4] La parte peticionaria sostuvo la procedencia de su solicitud con la siguiente prueba documental: "*Declaración Jurada*" suscrita por Roberto Palou Bosch; "*Demanda*" con fecha de 1 de junio de 2012; documento intitulado "*Acuerdo de Disolución de Sociedad Civil*;" "*Contrato Bilateral de Promesa de Compraventa*;" "*Declaración Jurada para Consentir que se Dicte Sentencia por Consentimiento*," suscrita por Javier O'Farrill Morales; "*Sentencia*" emitida el 24 de febrero de 2017; "*Demanda*" con fecha de 6 de abril de 2017; "*Moción en Cumplimiento de Orden,*" presenta por Jorge Morales Cruz y Julia Navarro Navarro; "*Sentencia*" emitida el 15 de mayo de 2017 y transcrita el 19 de junio de 2017; "*Moción*" con fecha de 30 de junio de 2017, presentada por Javier O' Farrill Morales; "*Orden*" emitida el 8 de agosto de 2017; "*Mandamiento*" emitido el 8 de agosto de 2017; "*Escrito Informativo y Solicitud de Orden,*" presentado por los herederos de Jorge Morales Cruz en fecha del 30 de agosto de 2017; "*Sentencia*" emitida por el Tribunal de Apelaciones en fecha del 28 de septiembre de 2018, en el caso KLCE201800978; "*Sentencia Parcial Y Orden,*" emitida el 11 de diciembre de 2018; y "*Resolución*" emitida el 2 de enero de 2019.

[5] La parte recurrida sostuvo la procedencia de su solicitud con la siguiente prueba documental: "*Juramento*" suscrito por Javier O'Farrill Morales.

cuotas particulares son de un cincuanta por ciento (50%). Añadió, que es un hecho incontrovertido que llevaba a cabo una actividad agrícola en las instalaciones de la cosa comun, la cual es conforme al destino de la referida finca. No obstante, según alegó, la parte peticionaria nunca había solicitado utilizar la propiedad comun. De igual modo, nunca se le había negado su uso.

De otra parte, expuso como hecho controvertido la procedencia del pago en concepto de renta reclamado por la parte peticionaria. Indicó, que la fecha de presentación de la "*Tercera Demanda Enmendada*," sería el punto de partida para computar lo reclamado. Ello, dado que, en dicha fecha la parte peticionaria realizó propiamente una alegación de pago de canon de arrendamiento. Sin embargo, según adujo, dicha parte no cumple con los criterios para ser acreedora de un pago en concepto de renta. Esto, por la razón de que no había demostrado la existencia de un acto obstativo que le diera derecho a tal cobro. Además, sostuvo que la parte peticionaria no había presentado evidencia sobre el valor razonable de la renta y la fecha desde cuando procedería esta. De igual manera, argumento que quedada pendiente las obligaciones de pago de gastos de conservación y mantenimiento que la referida parte debía satisfacer. Ante ello, solicitó al foro recurrido que denegara la "*Solicitud de Sentencia Sumaria Parcial.*"

En atención a los escritos presentados, el 15 de febero de 2024, el foro recurrido notificó la "*Resolución*" que nos ocupa. Mediante esta, declaró *No Ha Lugar* la "*Solicitud de Sentencia Sumaria Parcial.*" En dicha "*Resolución*," el tribunal de instancia esbozó las siguientes determinaciones de hechos que no están en controversia:

1. Los demandantes son dueños de una participación en común *pro indiviso* de un 50% en un inmueble donde ubica el negocio de matanza de animales continuamente conocido como El Macelo que incluye las edificaciones, bienes muebles, maquinarias necesarias para su operación del negocio.

2. Los demandados son dueños de una participación en común *pro indiviso* de un 50% en un inmueble donde ubica el negocio de matanza de animales continuamente conocido como El Macelo que incluye las edificaciones, bienes muebles, maquinarias necesarias para su operación del negocio.

3. El 6 de abril de 2017 los demandantes presentaron el caso civil número DEPE2017-0101 sobre deshucio comercial y orden de cese y desista de uso. Tomamos conocimiento judicial de este caso.

4. El Sr. Jorge Morales Cruz, la Sra. Julia Navarro y la sociedad legal de gananciales compuesta por ambos solicitaron la intervención como cuestión de derecho en el caso civil número DEPE2017-0101 a lo que la parte demandante se allanó. El Tribunal declaró ha lugar la solicitud convirtiendo a éstos en partes.

5. A la vista en su fondo del caso civil número DEPE2017-0101 comparecieron el Sr. Javier O' Farrill, el Sr. Jorge Morales Cruz, la Sra. Julia Navarro y la sociedad legal de gananciales compuesta por ambos representados por sus respectivos abogados.

6. El 15 de mayo de 2017 se celebró la vista en su fondo del caso civil número y en la sala abierta el Sr. Javier O' Farrill informó que acepta libre y voluntariamente que se dicatara sentencia de desahucio en su contra por ser precarista del uso de la participación *pro indiviso* de la propiedad concida como Macelo la Muda.

7. El Sr. Roberto Palou Bosch, la Sra. Amarilis De Jesús González, la sociedad legal de gananciales compuesta por ambos, el Sr. Jorge Morales Cruz, la Sra. Julia Navarrro y la sociedad legal de gananciales compuesta por ambos, acordaron concederle al Sr. Javier O' Farrill y a Guaynabo Meat LLC hasta el 30 de junio de 2017 para que voluntariamente desalojen la propiedad.

8. El 15 de mayo de [2017] el Tribunal dictó sentencia de desahucio, notificada el 23 de junio de [2017], declarando con lugar la demanda de desahucio en contra de Javier O' Farrill y Guaynabo Meat LLC, sus agentes y personas que ocuparan la propiedad a su nombre, de la propiedad conocida como Macelo La Muda.

9. La sentencia de desahucio del caso civil número DEPE2017-0101, advino final y firme desde la fecha de su registro, esto es, el 23 de junio de 2017, por acuerdo entre los demandantes y demandados.

10. El 30 de junio de 2017 el Sr. Javier O' Farrill informó al Tribunal en el caso civil número DEPE2017-0101 que a partir del 1 de julio de 2017 Guaynabo Meat LLC no llevaría a cabo actividad comercial directa y/o propia en los predios de la propiedad concida como Macelo La Muda.

11. El 30 de junio de 2017 el Sr. Javier O' Farrill informó al Tribunal en el caso civil número DEPE2017-0101 que el Sr. Jorge Morales Cruz falleció el 31 de mayo de 2017.

12. El 30 de junio de 2017 el Sr. Javier O' Farrill informó al Tribunal en el caso civil número DEPE2017-0101 que la Sucesión del Sr. Jorge Morales Cruz de la cual era parte, y su viuda llevarían a cabo actividades comerciales típicas del negocio Macelo en la propiedad común *pro indiviso* del Sr. Roberto Palou Bosch, la Sra. Amarilis De Jesús González y la sociedad legal de gananciales compuesta por ambos.

13. El 8 de agosto de 2017 el Tribunal emitió orden y mantenimiento de lanzamiento en contra de Javier O' Farrill Morales, Guaynabo Meat LLC y cualquier otra persona que en su nombre y representación ocupase la propiedad en el caso DEPE2017-0101.

14. El 30 de agosto de 2017 la Sucesión de Jorge Morales Cruz por conducto de sus herederos presentaron un escrito informativo y solicitud de orden en el caso civil número DEPE2017-0101 para informar que desde el 1 de julio de 2017 la actividad de matadero en la propiedad sería operaba por la Sucesión de Jorge Morales Cruz y para que se deje sin efecto la orden de lanzamiento de 8 de agosto de 2017.

15. El 28 de septiembre de 2018 el Tribunal de Apelaciones dictó una sentencia en el caso de epígrafe, caso número KLCE201800978, mediante la cual dispuso expedir el auto de certiorari, revocar la determinacióm recurrida y determinó de manera expresa que procede dividir la comunidad de bienes. El Tribunal de Apelaciones devolvió el caso para la continuación de los procedimientos.

16. El 11 de diciembre de 2018 el Juez Rebollo Casalduc emitió Sentencia Parcial en el caso de epígrafe mediante la cual dispuso:

"Se ordena la disolución de la comunidad de bienes entre las partes de epígrafe. Según dictaminado por el Honorable Tribunal de Apelaciones, corresponderá a las partes llegar a acuerdos. A esos efectos, se ordena a las partes presentar al Tribunal "acuerdos respecto a la tasación/avalúo, e inventario correspondiente."

Disponen de noventa (90) días. Será responsabilidad de las partes ponerse de acuerdo y sufragar (de ser necesario), en partes iguales, el proceso para obtener los valores correspondientes. Se adelanta a las partes que el Tribunal no intervendrá en el proceso de selección de profesionales, si algunos, para dichos procesos(s). Cualquier parte que presente moción a esos efectos, incluyendo sobre discrepancias, si algunas, en cuanto a valoración será sancionada severamente a tenor con las Reglas 37.7 y 44.2 de las de Procedimiento Civil (2009). Véase, además, a **Maldonado Ortiz v. Soltero Harrington** 113 DPR 494, 498 (1982).

Una vez se presente al Tribunal el documento final de "tasacion/avalúo" e "inventario" fimado por ambas partes, se procederá a dividirse la comunidad según lo dispuesto sobre la división de herencia. Art. 340 Código Civil (31 LPRA sec. 1285). Además, oportunamente el TPI señalará vista para evaluar daños, si algunos, según reclamados por las partes. Por tanto, no ha lugar a la Moción Solicitando Vista para la Calendarización a [t]enor con la Sentencia del Tribunal de Apelaciones."

17. El contador partidor del caso Lcdo. Reynaldo Quiñones Márquez visitó la propiedad el 30 de marzo de 2023 según acordado con las partes y abogados en las horas de la mañana para llevar a cabo el inventario de maquinaria y equipo. El contador partidor tuvo acceso ilimitado a las facilidades de El Macelo para llevar a cabo el inventario. En el escrito se presentó como anejo el inventario realizado por el contador partidor. Además, este informó que:

a. La mayor parte de la maquinaria y equipo que están instalados en El Macelo son parte de la infraestructura, por lo que remover los mismos o disponer de ellos no será fácil, por lo que la preocupación del Demandante de que los codemandados puedan remover el equipo de El Macelo no se justifica.
b. Existen en el área donde se procesa el ganado cierta maquinaria y equipo que el Sr. Javier O' Farrill identificó como equipo instalado por clientes para el manejo de la carne que El Macelo le suple a esos clientes y que dicha maquinaria y equipo no forma parte del iventario perteneciente a las partes en el caso.

c. Parte del equipo perteneciente a las partes está averiado obsoleto, por lo que ha tenido que ser sustituido por equipo nuevo comprado por los codemandados. Este será dilucidado durante el proceso de la partición final.

Por otra parte, el foro recurrido esbozó las siguientes determinaciones de hechos en controversia:

1. Cuál es el inventario final de bienes que corresponde a la comunidad de bienes entre las partes sujeta a liquidación.

2. Cuál es el valor de la propiedad inmueble y el inventario que corresponde a la comunidad de bienes en caso de compra por un tercero o por una de las partes de manera que se pueda dividir la comunidad
.
3. Si corresponde el pago de alguna cantidad por renta a la parte demandante por el uso exclusivo de la propiedad por parte de los desmandados, desde qué fecha y cuál sería el canon correspondiente. Si le corresponde algún crédito a la parte demandada por el mantenimiento de la propiedad mientras la ha ocupado exclusivamente, desde qué fecha y cuál sería la cantidad.

Inconforme, el 16 de febrero de 2024, la parte peticionaria presentó una opotuna "*Moción de Reconsideración.*" El 7 de mayo de 2024, el foro recurrido, notificó una "*Resolución*" en la que declaró *No Ha Lugar* la referida moción. Aun inconforme, el 14 de mayo de 2024, la parte peticionaria instó el presente auto de *certiorari*. En este esbozó el siguiente señalamiento de error:

**Erró el TPI al declarar No Ha Lugar la Solicitud de Sentencia Sumaria Parcial sobre el derecho a recibir compensación por el uso y disfrute exclusivo de los demandados.**

Con el beneficio de la comparececia de ambas partes, procedemos a disponer del asunto que nos ocupa.

**II.**

**A.  *Certiorari***

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del certiorari "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar

sus méritos". Íd. Ahora bien, el ejercicio de esta discreción no es absoluto. Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece una serie de instancias en las que los foros apelativos pueden ejercer su facultad revisora:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

De igual modo, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, delimita los criterios para la expedición de un auto de certiorari. Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera Gómez v. Arcos Dorados Puerto Rico*, supra. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. Íd.; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 848 (2023); *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, supra, dispone los siguientes criterios:

> A.  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F.  Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.    Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto. *Citibank v. ACBI,* 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es la facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción". Id. pág. 735; *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad". Id.; *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Id.; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material, concede demasiado peso a un hecho inmaterial, y fundamenta su determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos del caso hace un análisis liviano y la determinación resulta irrazonable. Id. pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de certiorari y ejercer nuestra función revisora.

**B.    Sentencia Sumaria:**

La sentencia sumaria es un mecanismo procesal cuya función es permitir a los tribunales disponer parcial o totalmente de litigios civiles en aquellas situaciones en las que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Rodríguez Méndez, et als v. Laser Eye*, 195 DPR 769, 784 (2016); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, detalla el procedimiento que debe seguir la parte promovente de una solicitud de sentencia sumaria. A tales efectos establece que una solicitud deberá incluir (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V., R. 36.3; *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *SLG Zapata Rivera v. J. F. Montalvo*, 189 DPR 414, 432 (2013).

De otro lado, la parte que se oponga a que se dicte sentencia sumaria está obligada a contestar la solicitud de forma detallada. *Ramos Pérez v. Univisión*, 178 DPR 200, 216 (2010). Para ello, deberá cumplir con los mismos requisitos con los que tiene que cumplir el promovente, pero, además, su solicitud deberá contener: (1) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, (2) con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal. 32 LPRA Ap. V, R. 36.3 (b) (2). Es decir, el promovido no puede descansar en meras alegaciones y afirmaciones. *Birriel Colón v. Supermercado Los Colobos,* 2023 TSPR 120, pág. 9, 212 DPR ___ (2023). Por el contrario, debe someter evidencia sustancial de los hechos materiales que están en

disputa y demostrar que tiene prueba para sustanciar sus alegaciones. *SLG Zapata Berríos v. JF Montalvo, supra*; *Ramos Pérez v. Univisión, supra*, pág. 215. De incumplir con ello, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho. *León Torres v. Rivera, supra*, pág. 44; *SLG Zapata-Rivera v. J.F. Montalvo, supra.*

No obstante, aun en ausencia de prueba que controvierta la evidencia presentada por la parte promovente, esto no significa que procederá la moción de sentencia sumaria automáticamente, pues el tribunal no está obligado a resolver a favor del promovente. Se resolverá a favor de este si el juzgador "queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y de que, por lo tanto, una vista en los méritos resulta innecesaria". *Mun. de Añasco v. ASES et al*, 188 DPR 307, 327 (2013) (énfasis suplido). Véase, además, *Fernández Martínez v. RAD-MAN SJ, LLC*, 208 DPR 310, 337 (2021); *Jusino Figueroa v. Walgreens of San Patricio*, 155 DPR 560, 578 (2001); *Piovanetti García v. Touma*, 178 DPR 745, 774 (2010).

Si la parte quien se opone a la solicitud de sentencia sumaria utiliza declaraciones juradas como su mecanismo para admitir prueba, estas se basarán en el conocimiento personal del o la declarante, además que contendrán hechos que sean admisibles y demuestren que el o la declarante esta cualificado para testificar. 32 LPRA Ap. V, R. 36.5. Por otra parte, la Regla 36.6 establece que:

Si de las declaraciones juradas de la parte que se oponga a la moción resulta que ésta no puede, por las razones allí expuestas, presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, el tribunal podrá denegar la solicitud de sentencia o posponer su consideración, concediéndole a la parte promovida un término razonable para que pueda obtener las declaraciones juradas, tomar deposiciones, conseguir que la otra parte le facilite cierta evidencia o dictar cualquier otra orden que sea justa. 32 LPRA Ap. V, R. 36.6.

En suma, se dictará sentencia sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay u otra evidencia que obre en el expediente del tribunal, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente. 32 LPRA Ap. V, R. 36.3 (e); *González Meléndez v. Municipio Autónomo de San Juan,* 212 DPR 601, 611-612 (2023). Así, el criterio rector al considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales pertinentes, según alegados por las partes en sus respectivas solicitudes u oposiciones, y que solo reste aplicar el Derecho. *Rodríguez García v. UCA, supra*, pág. 941. Esta determinación debe ser guiada por el principio de liberalidad a favor de la parte que se opone a que se dicte sentencia sumaria, para evitar la privación del derecho de todo litigante a su día en corte. *Ramos Pérez v. Univisión, supra*, pág. 216 (énfasis suplido).

Igual que el Tribunal de Primera Instancia, este Tribunal de Apelaciones se rige por la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia al determinar si procede o no una sentencia sumaria. Ello quiere decir que debemos realizar una revisión *de novo* y examinar el expediente de la manera más favorable a la parte que se opuso a la moción de sentencia sumaria en el foro primario, haciendo todas las inferencias permisibles a su favor. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico,* 212 DPR 335, 353 (2023)*; Meléndez González et al v. M Cuebas*, 193 DPR 100, 118 (2015).

Nos toca analizar los documentos que acompañan la moción que solicita la sentencia sumaria y los documentos incluidos con la moción en oposición, y aquéllos que obren en el expediente del Tribunal; con el fin de determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *S.L.G. v. S.L.G.*, 150 DPR 171, 193 (2000). Si de los documentos surge duda sobre la existencia de una controversia de hechos, éstas se deben resolver contra el promovente, ya

que este mecanismo procesal no permite que el Tribunal dirima cuestiones de credibilidad. *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020). Este foro intermedio tampoco puede adjudicar los hechos materiales y esenciales en disputa, ya que esa tarea le corresponde al foro de primera instancia. *Vera v. Dr. Bravo*, 161 DPR 307, 335 (2004). En fin, nuestra evaluación está limitada a la consideración de la evidencia que las partes presentaron ante el foro de primera instancia. Debemos revisar que los escritos cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. Además, verificamos si en realidad existen hechos materiales en controversia. Finalmente, de encontrar que los hechos materiales realmente están incontrovertidos, revisamos si la primera instancia judicial aplicó correctamente el derecho a la controversia. *Meléndez González et al. v. M. Cuebas, supra*, págs. 118-119.

**C.    Comunidad de Bienes:**

La comunidad de bienes existe "cuando la propiedad de una cosa o de un derecho pertenece proindiviso a varias personas." 31 LPRA sec. 1271;[6] *Molina González v. Álvarez Gerena*, supra, pág. 450. Nuestro ordenamiento jurídico regula la llamada comunidad romana, en la que cada comunero tiene una cuota ideal o alícuota de la cosa. *Díaz v. Aguayo*, 162 DPR 801, 808 (2004). En ausencia de un contrato o disposiciones especiales, dicha comunidad se regirá supletoriamente por las disposiciones del código civil. 31 LPRA sec. 1271; *Matos Rivera v. Soler Ortiz*, 2024 TSPR 50.

En lo pertinente, los partícipes de una comunidad de bienes tienen a su favor el libre goce de los bienes en común y sus productos. *Díaz v. Aguayo*, supra, pág. 810. Cónsono con lo anterior, en este tipo de comunidad se excluye el disfrute exclusivo de la cosa común por uno solo de los codueños. *Id.* Entiéndase, "cada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y de manera que no perjudique el interés de la comunidad ni impida a los

---

[6] Hacemos referencia al Código Civil de 1930, dado que, los hechos del presente caso tuvieron inicio bajo su vigencia.

copartícipes utilizarlas según su derecho." 31 LPRA sec. 1273; *Molina González v. Álvarez Gerena*, supra, pág. 450 De existir un uso exclusivo por alguno de los partícipes, esto tendrá como consecuencia el pago de una compensación a la comunidad. *Matos Rivera v. Soler Ortiz*, supra. Ello, dado que, dicho uso exclusivo "es contrario a los principios elementales de derecho basados en la equidad, los cuales no permiten el enriquecimiento injusto." *Id.*

Ahora bien, el uso exclusivo del bien por alguno de los comuneros no conllevará una compensación de forma automática. *Matos Rivera v. Soler Ortiz*, supra*.* Para que exista dicha compensación, el referido uso debe ser ilícito, de acuerdo con las siguientes circunstancias: el comunero al que se le reclama debe infringir una reglamentación específica de uso; impedir la utilización de la cosa común; o el comunero afectado debe requerir una compensación económica por el uso incompatible con su derecho, tal como lo sería una renta. *Id.* Además, el comunero afectado deberá identificar un acto obstativo que suponga tal exclusión o realizar un requerimiento afirmativo.

**III.**

En esencia, la parte peticionaria solicita que se declare, como cuestión de derecho, que es acreedora de una compensación por el uso exclusivo que la parte recurrida ejerce sobre la propiedad objeto de litigio. De igual modo, solicita que se declare el momento preciso por el cual dicha compensación se hace efectiva. Aduce, que la fecha del 6 de abril de 2017 es el punto de partida para computar su derecho de compensación. Toda vez que, en dicha fecha instó una reclamación de desahucio contra el señor Javier O' Farrill Morales (heredero del señor Morales) por beneficiarse de forma exclusiva de la cosa común. Indica, que en dicho caso fueron incluidos el señor Morales y la señora Navarro como partes interventoras. Añade, que el 15 de mayo de 2017 el tribunal de instancia dictó sentencia de desahucio a su favor, la cual ha sido incumplida por la

parte recurrida. Ello, dado que, continua beneficiandose de forma exclusiva de la finca en cuestión.

En oposición, la parte recurrida alega que la parte peticionaria ha demostrado un total desinterés en utilizar la participación que le corresponde sobre la propiedad objeto de este recurso. Además, argumenta que solo ha hecho uso de lo que le pertenece, y que no le ha impedido a la parte peticionaria utilizar la propiedad en común. A su vez, arguye que ha sufragado los gastos de mantenimiento de la finca, sin que la parte peticionaria aporte pago alguno. Finalmente, sostiene que falta la evidencia necesaria para hacer una adjudicación sumaria del asunto en cuestión. Entiende, que previo a adjudicar la participación del comunero alegadamente excluido, es necesario llevar a cabo un proceso de liquidación y división de la comunidad de bienes.

Tras realizar una revisión de *novo* del asunto ante nos, determinamos que no existen hechos materiales en controversia que impidan la disposición sumaria parcial solicitada. No está en controversia que la parte recurrida utiliza la propiedad en cuestión de forma exclusiva. Tampoco existe controversia sobre que la referida parte lleva a cabo una actividad agrícola en dicha finca. La parte recurrida no ha demostrado que su uso y disfrute del bien se ejerza en representación de la comunidad. De igual modo, no ha realizado algun señalamiento de que ambas partes se están beneficiando por igual de la aludida actividad. Por lo cual, solo resta aplicar el derecho al asunto que nos ocupa.

Es meritorio señalar, que la procedencia de una compensación ante el uso exclusivo de una cosa común por uno solo de los codueños es una cuestión de derecho. Ésta se desarrolla mediante la evaluación de una serie de criterios jurídicos. De entrada, la norma general es que cada comunero podrá usar y disfrutar la cosa comun, sin que medie la exigencia de una renta. Así pues, para que exista dicha compensación el uso del bien por uno solo de los comuneros debe ser ilícito según unos numerados escenarios. En el caso ante nos, se cumple con uno de ellos, dado que, la

parte peticionaria le realizó un requerimiento afirmativo a la parte recurrida, mediante el cual le solicitó el pago de una renta por un uso del bien común que es incompatible con su derecho de copropietaria. Así pues, dicho requerimiento le permitió invocar debidamente un derecho de crédito, ante unos hechos en los que no está en controversia el uso exclusivo del referido bien. Toda vez que, la parte recurrida ha estado utilizando unilateralmente la cosa común sin que la parte peticionaria obtenga algún beneficio de ello.

Una vez evaluado que la parte peticionaria cumplió de forma efectiva con los criterios jurídicos para invocar y ser acreedora de un crédito por uso exclusivo de un bien común, corresponde determinar el momento preciso en que se hace efectiva la compensación requerida. Señalamos que el momento en que se presenta una demanda se ha considerado como suficiente para iniciar el computo de la compensación. Véase, *Matos Rivera v. Soler Ortiz*, supra. Ahora bien, contrario a lo aducido por la parte peticionaria, el 6 de abril de 2017 no es la fecha en que inicia su derecho de crédito. Ciertamente, en la referida fecha la parte peticionaria entabló una causa de acción para impedir el uso exclusivo de la propiedad objeto de este pleito y solicitó indemnización por ello. No obstante, dicha reclamación fue entablada contra un tercero y no contra una de las personas comuneras. Ello, dado que, la persona demandada, el señor Javier O'Farrill Morales, obtuvo su participación sobre la comunidad luego del fallecimiento del señor Morales. Por lo cual, la parte peticionaria sí tiene un derecho de crédito, pero este surge desde el momento en que inició el presente pleito contra los comuneros causantes, el señor Morales y la señora Navarro. Entiéndase, el día 30 de mayo de 2017. Precisa señalar, que la parte peticionaria incluyo alegaciones de pago de renta por primera vez en la "*Tercera Demanda Enmendada*." Conforme a nuestro derecho vigente, una parte puede enmendar sus alegaciones, y están se podrán retrotraer al momento de la demanda original siempre y cuando surjan de la misma conducta, acto, omisión o evento. Véase, *Ortiz Díaz v. R. & R.*

*Motors Sales Corp.*, 131 DPR 829, 834 (1992). Ante ello, la solicitud de compensación que nos ocupa nace a la vida jurídica desde la presentación de la demanda original en contra del señor Morales y la señora Navarro.

Reiteramos, que la sentencia sumaria peticionada es una de naturaleza parcial. La solicitud de la parte peticionaria únicamente se limita a que se evalué la procedencia de una compensación por uso exclusivo y la fecha de su efectividad. Esto, según lo expuesto, es una cuestión de derecho susceptible de adjudicación sumaria. Así pues, la presente determinación se ciñe a declarar el derecho de crédito de la parte peticionaria y su fecha de inicio. Ello, a la luz de la jurisprudencia aplicable y el principio de equidad que evita el enriquecimiento injusto dentro de una comunidad de bienes. Por consiguiente, al amparo de la Regla 40 de este Tribunal, determinamos *expedir* el presente auto de *certiorari,* y con ello *revocamos* la resolución recurrida. En consecuencia, se dicta Sentencia Sumaria Parcial a los fines de declarar que la parte recurrida le debe pagar una renta a la parte peticionaria en concepto del uso exclusivo que ha estado ejerciendo sobre el bien común. Esto, a partir de la fecha en que se instó la presente reclamación. Entiéndase, el día 30 de mayo de 2017. El resto de las controversias, tales como la cuantía razonable a satisfacer en concepto de renta, la procedencia de pagos en concepto de conservación y mantenimiento, y la procedencia de los daños reclamados, quedan pendientes de adjudicación por el tribunal recurrido.

**IV.**

Por los fundamentos expuestos, *expedimos* el presente recurso de *certiorari* y *revocamos* resolución recurrida. Se dicta Sentencia Sumaria Parcial a los fines de declarar que la parte recurrida le debe pagar una renta a la parte peticionaria en concepto del uso exclusivo que ha estado ejerciendo sobre el bien común. Esto, a partir de la fecha en que se instó la presente reclamación. Entiéndase, el día 30 de mayo de 2017. A su vez, regresamos el presente caso al tribunal de instancia para la continuación de los procesos conforme a lo resuelto en esta sentencia.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones